UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERMAINE BARKLEY, | No. 2:16-cv-01386 KJM CKD P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| CALIFORNIA CORRECTIONAL HEALTH CARE SERVICES, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se in this civil rights action filed pursuant to 42 U.S.C. § 1983. In his first amended complaint, plaintiff asserts that defendants Smith, Vaughn, and Pettersen, all current or former doctors at Mule Creek State Prison, were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. See ECF No. 44. Currently pending before the court is defendants' motion for summary judgment. ECF No. 57. The motion has been fully briefed by the parties. See ECF Nos. 64-66. For the reasons that follow, the undersigned recommends granting defendants' motion for summary judgment.

I. **Allegations in the Complaint**

The allegations in the first amended complaint concern the adequacy of the health care that plaintiff received between June 2015 and June 2016 following his April 21, 2015 left knee surgery to repair his ACL and to perform a meniscectomy. ECF No. 44 at 2; see also Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995) (holding that a complaint or motion duly verified

under penalty of perjury pursuant to 28 U.S.C. § 1746 may be used as an opposing affidavit under Fed. R. Civ. P. 56).[1] By way of relief, plaintiff requests compensatory and punitive damages as well as "specific health care requested by plaintiff." Id. at 6-7.

## II. Motion for Summary Judgment

In their motion for summary judgment, defendants contend that there is no evidence to support plaintiff's claims of deliberate indifference to his serious medical needs because the treatment he received was medically indicated and appropriate. ECF No. 57-1. Defendants submitted an affidavit from Dr. Bennett Feinberg who reviewed plaintiff's medical records and provided an expert opinion concerning the treatment he received at Mule Creek State Prison following his original left knee surgery in April 2015. See ECF No. 57-2 at 34-44. This evidence demonstrates that plaintiff "was seen regularly by medical staff, including physical therapy, primary care physicians, nurses, and orthopedists." ECF No. 57-1 at 1. Plaintiff's allegations amount to nothing more than a difference of opinion with the treatment and medications he received which is not actionable under the Eighth Amendment. Id. at 11-12 (citing Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004)). Defendants assert that their summary judgment motion should be granted because their actions do not demonstrate a deliberate indifference to plaintiff's serious medical needs. Id.

Plaintiff filed an opposition with numerous exhibits which included plaintiff's affidavit; an affidavit from plaintiff's cell mate on the day that he reinjured his left knee; the CDCR's Comprehensive Accommodation Chrono Policy and Procedure; Dr. Vaughn's responses to plaintiff's requests for admissions; Dr. Smith's responses to plaintiff's requests for admissions; and, portions of plaintiff's medical records from April 2015 until October 2017. See ECF No. 64 at 34-144. Plaintiff relies on the Comprehensive Accommodation Chrono Policy to suggest that defendant Dr. Pettersen was deliberately indifferent to plaintiff's need for a lower bunk chrono after June 4, 2015. ECF No. 64 at 22-23. "Dr. Pettersen's failure to follow Policy, and establish

---

[1] Even though plaintiff's complaint is verified, it may function as a supporting affidavit for purposes of summary judgment only to the extent that it is "based on personal knowledge and set[s] forth specific facts admissible in evidence." Schroeder, 55 F.3d at 460 (citations omitted).

accommodations consistent with the plaintiff's injuries and condition, led to the plaintiff being re-assigned to the upper tier, and later [an] upper bunk, by custody [staff]." Id. at 23. In his opposition, plaintiff acknowledges that defendant Dr. Smith cannot be held liable for the actions or inactions of Dr. Pettersen and Dr. Vaughn. ECF No. 64 at 26-27. However, he asserts that defendant Dr. Smith had an "obligation and duty as Chief Medical Physician and Surgeon to make certain that plaintiff had reasonable access to a primary care physician." Id. Plaintiff further argues that defendant Dr. Vaughn made treatment decisions that he knew would put plaintiff at risk of adverse effects including gastrointestinal issues from Sulindac and withdrawal symptoms from discontinuing Tylenol-3. Id. at 30-31.

By way of reply, defendants submit that there is no evidence that the treatment decisions by defendants Dr. Pettersen and Dr. Vaughn were medically improper so as to demonstrate deliberate indifference to plaintiff's serious medical needs. ECF No. 65 at 3-5. Rather, plaintiff simply disagreed with their treatment plan because "he did not get the medications, accommodations, or treatment he wanted." ECF No. 65 at 7. Defendant Dr. Smith should be granted summary judgment because plaintiff's claims against him are based on his supervisory role as the Chief Physician and Surgeon at Mule Creek State Prison. Id. at 5-6. Moreover, defendant Dr. Smith's response to plaintiff's health care appeal is not a sufficient legal basis to attach liability. Id.

In addition to their reply, defendants filed objections to plaintiff's exhibits in opposition to summary judgment. ECF No. 66. Defendants object to a large portion of plaintiff's affidavit on the basis that it is hearsay and that plaintiff lacks the qualifications to provide expert medical testimony. ECF No. 66 at 1-2. They additionally object to a portion of the affidavit provided by plaintiff's cell mate as well as the CDCR Comprehensive Accommodation Chrono Policy and Procedure from 2006. Id. at 2-3.

To the extent the court necessarily relied on evidence that has been objected to, the court relied only on evidence it considered to be admissible. See Fed. R. Civ. P. 56(c)(4); see also Block v. City of Los Angeles, 253 F.3d 410, 419 (9th Cir. 2001) (holding that it was an abuse of discretion for the district court, at the summary judgment stage, to consider information from an

affidavit based on inadmissible hearsay rather than the affiant's personal knowledge).  It is not the practice of this court to rule on evidentiary matters individually in the context of summary judgment.  This is particularly true when "many of the objections are boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence."  See Burch v. Regents of the Univ. of Cal., 433 F. Supp. 2d 1110, 1124 (E.D. Cal. 2006) (explaining that the court should not be required to "identify potential hearsay, and determine if an exception applies—all without guidance from the parties" in evaluating the merits of evidentiary objections on a motion for summary judgment).

With that said, however, the court finds it necessary to address defendants' objection to the portions of plaintiff's affidavit that contain medical opinions.  The court will not consider as evidence plaintiff's attempts to interpret medical records or his statements regarding what he believes was the cause of his withdrawal symptoms.  The interpretation of medical records as well as the determination of the medical cause of various symptoms, involve matters that are scientific, technical, or require other specialized knowledge.  Accordingly, plaintiff may not testify as to these matters as a lay witness.  Fed. R. Evid. 701.  Defendants' objections on this ground are sustained because plaintiff is not a qualified expert witness concerning treatment of injuries or diseases.  See Fed. R. Evid. 701.

### III.   Facts[2]

At all times relevant to these proceedings, plaintiff was an inmate at Mule Creek State Prison. Defendants Pettersen and Vaughn were plaintiff's primary care physicians at various times during his incarceration and were employed by the California Department of Corrections and Rehabilitation. Defendants' Separate Statement of Undisputed Facts ("DSUF"), at ¶ 3. Defendant Doctor Smith was employed by CDCR as the Chief Physician and Surgeon at Mule Creek State Prison.  See ECF No. 57-2 at 26 (Affidavit of Dr. Christopher Smith, at ¶ 3).  All of the defendant doctors in the present action were in good standing with the California Medical Board.  DSUF ¶ 4.  Plaintiff has no medical training.  DSUF ¶ 2.

---

[2]All facts are undisputed unless otherwise indicated.

**A. Background Medical Evidence**

On April 21, 2015 Dr. Dowbak performed an ACL repair and a lateral and medial meniscectomy on plaintiff's left knee without any complications. DSUF at ¶ 5. Plaintiff was discharged back to Mule Creek with instructions which included full weight bearing on the left leg with crutches, a physical therapy consult, morphine (MS) for pain, Keflex to prevent an infection, dressing changes, and a two-week follow-up. DSUF at ¶ 6. Dr. Dowbak's discharge instructions were ordered and the on-call prison physician also ordered plaintiff to follow up with his primary care physician in 5-7 days. DSUF at ¶ 8; ECF No. 57-2 at ¶ 9 (Affidavit of Bennett Feinberg, M.D.).

On April 24, 2015, plaintiff was seen by nursing staff and his primary care physician, defendant Dr. Pettersen, following plaintiff's request to be issued a wheelchair on April 23, 2015.[3] DSUF at ¶ 8; ECF No. 57-2 at ¶ 10. During the exam, plaintiff complained of acute left knee pain and had increased swelling in his left knee, but there were no signs of infection. DSUF at ¶ 9. Dr. Pettersen prescribed plaintiff with additional pain medication consisting of an extra dose of immediate release 15 m.g. morphine. DSUF at ¶ 10. He replaced plaintiff's extended release 15 m.g. morphine twice daily, which was scheduled to expire in 2 days, with 30 m.g. extended release morphine for 5 additional days which was to be followed by 5 additional days of 15 m.g. extended release morphine twice daily. Id. Dr. Pettersen also referred plaintiff to physical therapy and ordered him a wheelchair for two weeks, as plaintiff had requested. DSUF at ¶ 11. On this same visit with his primary care physician, plaintiff signed a form indicating that he was refusing a lower level tier assignment and acknowledged that such a decision could result in a fracture or injury to his repaired left knee. DSUF at ¶12.

On May 7, 2015, plaintiff had a follow-up orthopedic visit with Dr. Pucelik who indicated that "[t]he wounds are good. The sutures are out. The swelling is only mild. He still has moderate pain, but is getting along well." DSUF at ¶ 14. A follow-up visit was recommended in 8 weeks. ECF No. 57-2 at 37, ¶ 11.

---

[3] Plaintiff submitted this request via a Health Care Services Request Form referred to as a CDCR 7362 Form. See ECF No. 57-2 at ¶ 10.

5

Plaintiff was seen by Nurse Toralba on May 15, 2015 after he submitted a 7362 health care request form for a "renewal of his cell feeds and a re-evaluation of his pain medication." ECF No. 57-2 at 37, ¶ 12; ECF No. 64 at 65, ¶ 7-8. Nurse Toralba noted that plaintiff was able to move, but with pain, and his left knee still had mild swelling. DSUF at ¶ 15. As a result, defendant Dr. Pettersen wrote an order to extend plaintiff's cell feeds for an additional 30 days as well as an order for the pain medication Methadone 5 m.g. twice daily as needed for knee pain for 10 days. DSUF at ¶ 15.

On May 21, 2015, plaintiff was seen by Dr. Pettersen for a follow-up visit who noted that plaintiff had "minimal left knee swelling" based upon an examination. DSUF at ¶ 16. Based on his assessment and plan, Dr. Pettersen changed plaintiff's pain medication to ibuprofen, with methadone as needed for breakthrough pain. DSUF at ¶ 17. He also extended plaintiff's wheelchair use for two more weeks. Id. Consistent with this plan, Dr. Pettersen wrote a prescription for methadone 10 m.g. twice a day as needed for breakthrough left knee pain for one week, tapering down to 5 m.g. twice a day for one week, ending on June 2, 2015. DSUF at ¶ 18. Plaintiff expressed his concerns about withdrawals with Dr. Pettersen who indicated that there was minimal potential for withdrawals based on the limited time and tapering dose given. ECF No. 64 at 66, ¶ 13; ECF No.57-2 at 32, ¶ 6. He also wrote a prescription for ibuprofen 600 m.g. four times a day as needed for left knee pain and Prilosec 20 m.g. daily. Id. Dr. Pettersen updated plaintiff's Comprehensive Accommodation Chrono to indicate that plaintiff was a limited wheelchair user with ground floor housing status which expired in two weeks on June 4, 2015. Id. This accommodation chrono did not require the signature of a Chief Medical Executive. DSUF at ¶ 20. According to plaintiff, Dr. Pettersen failed to authorize a lower bunk accommodation. ECF No. 64 at 65, ¶ 9.

On May 27, 2015, plaintiff was seen for a physical therapy assessment which indicated that he was responding well following his ACL reconstruction surgery. DSUF at ¶ 21. The physical therapy plan was to see plaintiff for 8 visits. Id.

////

////

6

**B. Medical Treatment During the Relevant Time Frame in the Complaint**

Following plaintiff's submission of a 7362 health care request form on June 2, 2015 for a renewal of his pain medication, plaintiff was seen by Nurse Toralba on the next day. DSUF at ¶ 22. Plaintiff reported taking ibuprofen for pain, but indicated that "it's not working." Id. Based on an examination, plaintiff had mild tenderness and swelling in his left knee, with a normal gait. DSUF at ¶ 23. Upon consulting with Dr. Pettersen on June 3, 2015, plaintiff was prescribed Sulindac for his left knee pain instead of the ineffective ibuprofen. DSUF at ¶ 24. In his medication order, Dr. Pettersen indicated that plaintiff had no known drug allergies. Id. Plaintiff had no contraindications for prescribing Sulindac in his medical records. DSUF ¶ 77-79. The gastrointestinal side effects of Sulindac are "not uncommon." DSUF ¶ 80. Such side effects are "not an absolute contraindication to the prescription of the medication in the absence of more serious conditions." DSUF ¶ 81.

Plaintiff alleges that he was abruptly taken off Methadone as of June 2, 2015 by Dr. Pettersen. ECF No. 44 at 2. On the night of June 3, 2015, plaintiff "was throwing up, had muscle spasms, cold sweats, hot flashes, magrain [sic] like headaches and was debilitated." ECF No. 64 at 66, ¶ 15. Dr. Pettersen was never advised that plaintiff was experiencing any of these symptoms. ECF No. 57-2 at 32.

On June 10, 2015, plaintiff was seen for physical therapy and noted to be "out of [the] wheelchair, [and] doing well on [a] single-point cane." DSUF at ¶ 25.

Following a 7362 request for additional medical accommodations on June 24, 2015, plaintiff was seen by Nurse Dator on June 26, 2015 who referred plaintiff to his primary care physician for a routine appointment to review the accommodations requested by plaintiff. DSUF at ¶ 26. Such referrals are sent directly to the medical schedulers in charge of creating the daily schedules for the prison doctors. DSUF at ¶ 27.

On July 2, 2015, plaintiff was seen for a follow-up physical therapy appointment. DSUF ¶ 28. He is noted to have some "mild pain but [is] doing better overall." Id.

Defendant Dr. Pettersen left his employment with CDCR and Mule Creek State Prison on July 3, 2015. DSUF ¶ 90. Dr. Pettersen was not involved in nor asked to consult in plaintiff's medical

care after this date. DSUF ¶ 91.

On July 6, 2015, plaintiff submitted a 7362 health care request based on complaints of severe throbbing of his left knee and an inability to take Sulindac as prescribed. ECF No. 57-2 at 39, ¶ 18. Plaintiff was seen on July 8, 2015 by Nurse Dator who referred him to his primary care physician for a routine appointment. DSUF at ¶ 29.

On July 14, 2015, plaintiff received physical therapy. DSUF ¶ 30. The assessment and therapy plan at that visit was to wean plaintiff off the use of the cane. DSUF at ¶ 33.

On July 21, 2015 at 7:30 p.m., plaintiff was seen at the prison's Triage and Treatment Area with the chief complaint that he had "fall[en] from [the] toilet." DSUF at ¶ 32. Plaintiff was noted to have "pain, mild swelling, full range of motion, weight bearing ok, [and] no deformity" of his left knee. DSUF ¶ 33. The on-call physician, Dr. Jackson, prescribed ibuprofen for pain and ordered an x-ray of the left knee along with a lower bunk assignment for one week. Id. According to the x-ray which was performed the next day, there was no acute fracture or dislocation of his left knee. DSUF ¶ 34. Nor was there any noticeable degree of fluid accumulation or swelling. Id.

On August 12, 2015, plaintiff had a follow-up physical therapy appointment at which his gait was noted to be within normal limits without the use of a cane. DSUF ¶ 35-36. He was noted to be doing better overall and progressing well. DSUF ¶ 36. Plaintiff had another physical therapy appointment on August 31, 2015. DSUF ¶ 37.

Dr. Wong examined plaintiff on August 31, 2015 based on plaintiff's 602 appeal requesting a renewal of his low bunk chrono and a review of his pain management plan. DSUF ¶ 38. Plaintiff was "fully ambulatory [with] no limping or any antalgic gait. He is able to get on and off the examination table with ease. His flexion and extension of both knees were equal bilaterally, [and] the left knee had a well-healed surgical scar with no swelling or redness." DSUF ¶ 39. Dr. Wong granted plaintiff's request to renew his low bunk chrono until he had a follow-up with the orthopedic department. DSUF ¶ 40. He also prescribed plaintiff Tylenol No. 3 with Codeine for pain for 10 days noting that "the patient agreed with the tapering dose." Id. According to plaintiff, Dr. Wong informed him that he should submit a CDCR Form 22 to Dr. Smith, the Chief

8

Physician and Surgeon, if he had any continued issues related to his appeal. ECF No. 64 at 68, ¶ 22 (Plaintiff's Affidavit). According to defendants, there is no mention of submitting a CDCR 22 form in Dr. Wong's notes, nor is this form utilized for resolving health care related issues. ECF No. 57-2 at 40, ¶ 21. Plaintiff indicated that he submitted a CDCR Form 22 to Dr. Smith on two occasions: September 4, 2015 and January 17, 2016. ECF No. 64 at 68, ¶¶ 24, 25.

Dr. Smith responded to plaintiff's health care appeal (MCSP HC 15047118) at the first level of administrative review on September 16, 2015. DSUF ¶ 86. Dr. Smith agreed with Dr. Wong's August 31, 2015 treatment plan. DSUF ¶ 86.

Plaintiff received additional physical therapy on September 16, 2015 as well as November 14, 2015. DSUF ¶ 43.

On November 16, 2015 plaintiff was seen by Dr. Dowbak for a follow-up orthopedic appointment. DSUF ¶ 44. Plaintiff reported no instability in his left knee, but did indicate that it was painful in cold weather. DSUF ¶ 45. An examination revealed that plaintiff's wounds were well-healed and his left knee had a full range of motion with no swelling or looseness of the joint. Id. A repeat x-ray that was performed in the clinic on that day demonstrated only post-operative changes from the ACL repair and no joint effusion or other significant abnormalities. DSUF ¶ 46. Based on this clinical impression, Dr. Dowbak recommended that plaintiff "resume normal activity." DSUF ¶ 47. He did not order any follow-up orthopedic visit. Id.

Plaintiff submitted a 7362 health care request form on November 17, 2015 complaining of sharp pain after his physical therapy appointment the day before, but the medical records demonstrate that his only appointment the prior day was his orthopedic follow-up with Dr. Dowbak. ECF No. 57-2 at 40, ¶ 23.

Plaintiff was scheduled to meet with his primary care physician on November 18, 2015 to review the orthopedic visit results from November 16, 2015. ECF No. 57-2 at 41, ¶ 23. There is a dispute between the parties as to why plaintiff did not attend this PCP appointment. Defendants indicate that he was a no-show to this appointment. ECF No. 57-2 at 40-41, ¶ 23. However, plaintiff states in his affidavit that he "never received any ducats for the appointments that the defendants alleged I missed…." ECF No. 64 at 70, ¶ 32.

On November 20, 2015, plaintiff was seen by the nurse for his 7362 request. DSUF ¶ 49. The nurse noted that plaintiff ambulated without difficulty and his left knee had no swelling, tenderness or redness. Id. Plaintiff was instructed to take ibuprofen or Tylenol for pain. Id.

On December 6, 2015 plaintiff submitted another 7362 complaining about ongoing pain and the November 18, 2015 PCP visit that never happened. He was scheduled to see the nurse on December 7, 2015 to review the orthopedic visit results from November, but once again this visit did not occur. ECF No. 57-2 at 41, ¶ 24; DSUF ¶ 51. The parties do not agree on the reason why this visit did not happen.

Plaintiff submitted another 7362 request on December 15, 2015 and was seen on December 18, 2015. DSUF ¶ 52. Initially, plaintiff was listed as a no-show for this appointment, but then he showed up late and was rescheduled for a visit with the nurse the following week. DSUF ¶ 52. The rescheduled appointment for December 25, 2015 never occurred for reasons that are once again unclear from the record.

Plaintiff received physical therapy on January 21, 2016. DSUF ¶ 54.

On February 17, 2016, plaintiff was seen for the first time by defendant Dr. Vaughn. DSUF ¶ 55. At this visit, plaintiff reported throbbing pain in his left knee that had not improved with physical therapy. DSUF ¶ 56. His pain improved with rest, but was made worse with prolonged ambulation. Id. Although plaintiff reported gastrointestinal (GI) upset from using Sulindac or Naproxen even with food, there were no objective medical findings such as renal insufficiency, hepatic dysfunction, or anemia that would contraindicate prescribing these medications. DSUF ¶ 57; ECF No. 64 at 68, ¶ 26. On exam, plaintiff's left knee showed positive McMurrays (a palpable catching on the joint line that can be indicative of possible meniscal tear), mild medial left knee swelling, no erythema or warmth, and no ligament laxity on neurologic exam. DSUF ¶ 58. Dr. Vaughn prescribed Tylenol 3 once a day as needed for 30 days and naproxen twice a day from the canteen. DSUF ¶ 59. He also ordered an MRI of plaintiff's left knee and recommended that plaintiff avoid heavy lifting as well as strenuous, vigorous activity. DSUF ¶ 59.

////

////

The first week of March 2016,[4] plaintiff had an MRI of his left knee that did not show signs of internal derangement or retear. DSUF ¶ 60; ECF No. 57-2 at 21, ¶ 6. Even though plaintiff submitted a 7362 request form for a renewal of his Tylenol 3 medication on March 5, 2016, Dr. Vaughn discontinued this medication and replaced it with Sulindac based upon his review of the MRI results. DSUF ¶ 62; ECF No. 57-2 at 41, ¶ 27. Plaintiff indicates that he started to experience "migraine like headaches, hot and cold flashes, [and] sweats" beginning on March 12, 2016. ECF No. 64 at 69, ¶ 27. On March 15, 2016, plaintiff submitted another 7362 request form complaining about his medication change, but it did not mention any withdrawal symptoms plaintiff was experiencing. ECF No. 57-2 at 41, ¶ 28. Plaintiff refused his appointment to discuss the medication change on March 21, 2016. DSUF ¶ 65.

On April 20, 2016, plaintiff had a follow-up appointment with Dr. Vaughn. DSUF ¶ 66. On examination, plaintiff's knee was stable but had mild tenderness. DSUF ¶ 67. Dr. Vaughn noted that there were "no signs of internal derangement or retear on [his] recent MRI," but he referred plaintiff for an orthopedic surgery consultation based on the reported instability of plaintiff's left knee. Id.

The orthopedic consultation occurred on June 10, 2016 with Dr. Paik. DSUF ¶ 68. At this appointment, plaintiff "complained of pain and soreness in his [left] knee joint with [a] tendency for his knee to give out and instability. DSUF ¶ 69. As a result, Dr. Paik recommended that plaintiff use an ACL knee brace and receive physical therapy. Id. He also recommended "an examination under anesthesia, arthroscopic joint debridement for evaluation of the integrity of the anterior cruciate ligament for further evaluation." Id. Plaintiff was "given instructions to do isometric exercise[s] and use the knee brace." Id. Dr. Paik also included hand-written recommendations for the use of an anti-inflammatory drug. DSUF ¶ 70. The recommendations for orthopedic surgery and physical therapy were ordered by Dr. Vaughn on June 16, 2016.

---

[4] The parties appear to dispute the date this MRI occurred. Plaintiff as well as Dr. Feinberg indicate in their affidavits that the MRI occurred on March 4, 2016. See ECF No. 64 at 69, ¶ 28; ECF No. 57-2 at 42, ¶ 29. However, Dr. Vaughn indicates that the MRI occurred on March 6, 2015. ECF No. 57-2 at 21, ¶ 6. The radiology report with the exact date of the MRI is not included in the record, but a subsequent orthopedic report dated June 10, 2016 indicates that the MRI was performed on March 4, 2016. See ECF No. 64 at 125-126.

DSUF ¶ 71.

Plaintiff underwent a second left knee surgery on October 4, 2016 as a result of injuries he sustained from his fall on July 21, 2015. ECF No. 64 at 59.

**C. Low Bunk Chrono**

A low bunk chrono accommodation following surgery is typically valid for a period of 30 days. DSUF ¶ 82. Plaintiff was assigned a low bunk from February 23, 2014 to at least July 14, 2015, although it is unclear whether this was due to a medical accommodation chrono or simply his housing assignment. See DSUF ¶ 83, ECF No. 57-2 at 28, ¶ 8; ECF No. 64, 67, ¶ 19.

Plaintiff was housed in an upper tier of administrative segregation on June 23, 2015 which required him to go up a flight of stairs. ECF No. 44 at 3; ECF No. 64, at 66-67, ¶ 16. He submitted a 7362 request for a lower level/lower bunk accommodation on June 24, 2015. ECF No. 64, at 67, ¶ 17. Plaintiff was seen by a nurse on June 26, 2015 regarding this request which was ultimately referred to plaintiff's primary care physician to evaluate. ECF No. 64, 67, ¶ 18.

From July 15, 2015 to July 21, 2015, plaintiff was assigned an upper bunk on the lower tier. ECF No. 57-2 at 28, ¶ 8; ECF No. 64 at 67, ¶ 19. Plaintiff slipped and landed on his knee while attempting to climb onto his upper bunk on July 21, 2015. ECF No. 64, at 67, ¶ 21. Following plaintiff's injury on July 21, 2015, he was re-assigned to a lower bunk. DSUF ¶ 84.

**IV. Legal Standards**

**A. Summary Judgment**

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials...." Fed. R. Civ. P. 56(c)(1)(A).

Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

1 | essential to that party's case, and on which that party will bear the burden of proof at trial. See
2 | Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an
3 | essential element of the nonmoving party's case necessarily renders all other facts immaterial."
4 | Id.

5 | If the moving party meets its initial responsibility, the burden then shifts to the opposing
6 | party to establish that a genuine issue as to any material fact actually does exist. See Matsushita
7 | Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the
8 | existence of this factual dispute, the opposing party may not rely upon the allegations or denials
9 | of their pleadings but is required to tender evidence of specific facts in the form of affidavits,
10 | and/or admissible discovery material, in support of its contention that the dispute exists or show
11 | that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed.
12 | R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the
13 | fact in contention is material, i.e., a fact that might affect the outcome of the suit under the
14 | governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,
15 | Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is
16 | genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving
17 | party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

18 | In the endeavor to establish the existence of a factual dispute, the opposing party need not
19 | establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
20 | dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
21 | trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce
22 | the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
23 | Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963
24 | amendments).

25 | In resolving the summary judgment motion, the evidence of the opposing party is to be
26 | believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the
27 | facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475
28 | U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

obligation to produce a factual predicate from which the inference may be drawn. See <u>Richards v. Nielsen Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), <u>aff'd</u>, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

### B. Eighth Amendment Deliberate Indifference Standard

Plaintiff's claims, which arise under the Eighth Amendment, have two elements: proof that plaintiff had a "serious medical need" and that defendants acted with "deliberate indifference" to that need. <u>Estelle v. Gamble</u>, 429 U.S. 97, 105 (1976). A medical need is serious if "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992) (quoting <u>Estelle</u>, 429 U.S. at 104). Deliberate indifference is proved by evidence that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 825, 837 (1994). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." <u>Hallett v. Morgan</u>, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted).

Mere negligence is insufficient for Eighth Amendment liability. <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th Cir. 1998). In addition, "[a] difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." <u>Snow v. McDaniel</u>, 681 F.3d 978, 987 (9th Cir. 2012) (citing <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989)). Nor does a dispute between a prisoner and prison officials over the necessity for, or extent of, medical treatment amount to a constitutional violation. <u>See</u>, <u>e.g.</u>, <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1058 (9th Cir. 2004); <u>Sanchez v. Vild</u>, 891 F.2d 240, 242 (9th Cir. 1989). In order "to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of

treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the inmate's] health.'" Toguchi, 391 F.3d at 10158 (quoting Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)).

**V.    Analysis**

There is no dispute that plaintiff had a serious medical need while an inmate at Mule Creek State Prison between June 2015 and June 2016. Therefore, there is no genuine issue of material fact as to the first prong of plaintiff's deliberate indifference claim. The only remaining issue is whether there is a genuine issue of material fact concerning defendants' failure to respond to plaintiff's medical need in a manner that caused him harm in violation of the Eighth Amendment. Jett, 439 F.3d at 1096.

The undersigned finds that defendants have met their initial burden of informing the court of the basis for their motion, and identifying those portions of the record which they believe demonstrate the absence of a genuine issue of material fact. The burden therefore shifts to plaintiff to establish the existence of a genuine issue of material fact with respect to his claims of inadequate medical care. See Matsushita Elec. Indus., 475 U.S. at 586 (1986). The court has reviewed plaintiff's verified complaint and his affidavit and exhibits in opposition to defendants' pending motion. Drawing all reasonable inferences from the evidence submitted in plaintiff's favor, the court concludes that plaintiff has not submitted sufficient evidence at the summary judgment stage to create a genuine issue of material fact with respect to his claim that the defendants violated his rights under the Eighth Amendment. The court will analyze the claims against each defendant separately.

**A.  Defendant Smith**

Dr. Smith's only involvement in plaintiff's medical care between June 2015 and June 2016 was based on his September 16, 2015 first level administrative response to a health care appeal filed by plaintiff concerning his request for a lower bunk/lower tier accommodation chrono and a pain management plan. See ECF No. 64 at 112-113. Dr. Smith was never plaintiff's primary care physician. Dr. Smith agreed with the treatment recommendations of Dr. Wong, but plaintiff disagreed with both doctors. In this vein, plaintiff's claim against defendant Dr. Smith is based

15

solely on a difference of opinion with his medical providers, which is not a basis for Eighth Amendment liability. See Snow v. McDaniel, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)).

Recognizing that there is no supervisory liability in § 1983 actions, plaintiff argues in his opposition to summary judgment that defendant Dr. Smith was deliberately indifferent to his serious medical needs by not ensuring plaintiff's adequate access to a new primary care physician after July 3, 2015, when defendant Dr. Pettersen was no longer plaintiff's primary care physician. ECF No. 64 at 29. Here, there is no evidence presented that defendant Dr. Smith was responsible for assigning plaintiff a new primary care physician, much less that any delay in plaintiff's next primary care visit was attributable to any action or inaction by this defendant. See Coleman v. Quaker Oats Co., 232 F.3d 1271, 1291-94 (9th Cir. 2000) (a district court does not err when it refuses to entertain a new theory of liability raised for the first time at the summary judgment stage). Nor is there any suggestion in the record that Dr. Smith was responsible for the primary care visits that plaintiff missed in November and December, 2015. Accordingly, Dr. Smith is entitled to summary judgment because there is no evidence that he was deliberately indifferent to plaintiff's need for ongoing care by his primary care physician.

As an additional basis for liability, plaintiff argues defendant Dr. Smith failed to follow CDCR's comprehensive accommodation policy pursuant to which plaintiff was entitled to a lower bunk chrono in July 2015 that would have prevented him from re-injuring his left knee.[5] ECF No. 64 at 13. To the extent that plaintiff contends that defendant Dr. Smith was deliberately indifferent by failing to continue plaintiff's low bunk chrono, there is no evidence that Dr. Smith's approval was required in order for this chrono to continue. See Barry v. Ratelle, 985 F.

---

[5] Section 1983 provides a cause of action where a state actor's "conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." Leer v. Murphy, 844 F.2d 628, 632 (9th Cir. 1987) (quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327, 328 (1986)). "[S]tate departmental regulations do not establish a federal constitutional violation." Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009). The issue is whether the defendants were deliberately indifferent to plaintiff's serious medical needs. This is not established based upon failure to comply with CDCR guidelines for providing medical accommodations. For this reason, the court has not considered the Comprehensive Accommodation Chrono Policy.

Supp. 1235, 1239 (S.D. Cal.1997) (implied factual awareness through a defendant's reading and denial of a prisoner's grievance is insufficient to state a claim of deliberate medical indifference) (dismissing claims against warden). Defendant Dr. Smith was not involved in plaintiff's daily health care. His review of plaintiff's health care grievance in September 2015 occurred months after plaintiff re-injured his knee. Accordingly, there is no genuine issue of material fact necessitating a trial on Dr. Smith's failure to provide plaintiff with a low bunk accommodation. For all of these reasons, Dr. Smith is entitled to summary judgment.

**B. Defendant Vaughn**

Plaintiff's Eighth Amendment claim against defendant Dr. Vaughn is based on his prescribing Sulindac for pain which caused plaintiff to experience gastro-intestinal upset. Plaintiff also contends that defendant Dr. Vaughn failed to taper plaintiff off the Tylenol-3 pain medication causing plaintiff to suffer minor withdrawal symptoms. ECF No. 64 at 17. However, there is no admissible evidence before the court indicating that the course of action recommended by defendant Dr. Vaughn was not appropriate under the circumstances presented to him, much less that it constituted deliberate indifference. Plaintiff has not submitted any evidence to cast doubt on defendants' unrefuted expert testimony which establishes that prescribing Sulindac was medically appropriate under the circumstances and within the standard of care and skill ordinarily exercised by reputable members of the medical profession at that time. At best, the evidence demonstrates that plaintiff did not receive the type of pain medication that he wanted. See Parlin v. Sodhi, No. 10-6120 VBF MRW, 2012 WL 5411710 at *5 (C.D. Cal. Aug. 8, 2012) ("At its core, Plaintiff's claim is that he did not receive the type of treatment and pain medication that he wanted when he wanted it. His preference for stronger medication – Vicodin, Tramadol, etc. – represents precisely the type of difference in medical opinion between a lay prisoner and medical personnel that is insufficient to establish a constitutional violation."); Womack v. Bakewell, No. 10-CV-2778 GEB DAD, 2013 WL 3148467, *9 (E.D. Cal. June 19, 2013) ("In this regard, plaintiff's disagreement with defendants about the type and strength of his pain medication does not reflect a conscious disregard of plaintiff's serious medical needs. In short, based on the record before the court, defendants' refusal to provide plaintiff with the pain medication he preferred did

not rise to the level of deliberate indifference in violation of the Eighth Amendment."). In this case, plaintiff has not come forward with any evidence demonstrating that the course of treatment provided by defendant Vaughn was medically unacceptable under the circumstances. Nor has he provided any medical evidence demonstrating that a tapered dose of Tylenol 3 was required in order to avoid any type of withdrawal symptoms. As the evidence shows a mere difference in opinion between plaintiff and a prison doctor as to the appropriate course of treatment, plaintiff has not raised a genuine dispute of material fact on this basis. Defendant Vaughn's motion for summary judgment should be granted.

### C. Defendant Pettersen[6]

Plaintiff's main complaint with Dr. Pettersen's prescription of methadone for pain is based on his failure to follow-up with plaintiff between May 21, 2015 and June 2, 2015 "to discuss withdrawal prevention and pain management options moving forward." ECF No. 64 at 66, ¶ 13. The court has credited plaintiff's description of the symptoms he experienced beginning on June 3, 2015 even though they were not documented in his medical records. However, the undisputed evidence establishes that Dr. Pettersen prescribed Methadone in a tapered dosage over a two-week period of time. There was a minimum potential for withdrawal based on the limited time and tapering dose given by Dr. Pettersen. Defendants have submitted unrefuted expert testimony which establishes that the tapered dosage was medically appropriate under the circumstances and within the standard of care. Even assuming the facts in the light most favorable to plaintiff, there is no evidence that there was a substantial risk of serious harm to plaintiff from the tapered prescription of methadone. See Farmer v. Brennan, 511 U.S. at 837.

////

---

[6] In the summary judgment motion, defendant Dr. Pettersen states that he "has not had an opportunity to engage in discovery because discovery was closed at the time he appeared in this action." ECF No. 57-1 at 2. On the same day that defendant Dr. Pettersen filed his answer, he also filed a motion to modify the discovery and scheduling order governing this case. ECF No. 53. This motion was denied without prejudice on April 26, 2018 based on the pending motion for summary judgment. ECF No. 60. In light of the recommendation to grant defendant Dr. Pettersen's motion for summary judgment, there is no need to re-open the discovery period in this case.

Plaintiff also contends that defendant Dr. Pettersen was deliberately indifferent to his need for a low bunk chrono. To the extent that plaintiff faults Dr. Pettersen for not authorizing him a low bunk accommodation on May 21, 2015, the undisputed evidence establishes that plaintiff was assigned a low bunk until July 14, 2015. Moreover, a low bunk medical accommodation is generally only provided for 30 days following surgery. In this case, plaintiff has failed to come forward with evidence demonstrating that Dr. Pettersen was aware of any facts from which he could have drawn an inference of a substantial risk of serious harm to plaintiff from not authorizing this medical chrono on May 21, 2015, 30 days after his surgery. To the extent that plaintiff asserts that Dr. Pettersen should have authorized the low bunk chrono at the end of June 2015 when plaintiff submitted a 7362 requesting this medical accommodation, there is no evidence indicating that Dr. Pettersen ever received this request or failed to act on it before leaving his position at Mule Creek. The undisputed evidence establishes that nursing staff referred plaintiff's accommodation request to his primary care physician on June 26, 2015. However, Dr. Pettersen left his employment at Mule Creek on July 3, 2015. Based on this evidentiary gap, defendant Pettersen's motion for summary judgment should be granted. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd 810 F.2d 898, 902 (9th Cir. 1987). Nor has plaintiff submitted evidence to show that Dr. Pettersen's decision not to authorize a low bunk chrono was medically unacceptable under the circumstances. For all of these reasons, Dr. Pettersen's motion for summary judgment should be granted.

**VI.    Plain Language Summary for Pro Se Party**

Since plaintiff is acting as his own attorney in this case, the court wants to make sure that the words of this order are understood. The following information is meant to explain this order in plain English and is not intended as legal advice.

The court has reviewed the pending motion for summary judgment as well as the affidavits and evidence submitted by the parties and has concluded that the facts of your case are not sufficiently in dispute to warrant a trial. This problem is not fixable by filing an amended complaint.

////

You have fourteen days to explain to the court why this is not the correct outcome in your case. If you choose to do this you should label your explanation as "Objections to Magistrate Judge's Findings and Recommendations." The district court judge assigned to your case will review any objections that are filed and will make a final decision on the motion for summary judgment.

## VII. Conclusion

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 57) be granted; and,
2. Judgment be entered in favor of defendants; and,
3. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: December 11, 2018

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

12/bark1386.msj.docx